## GULF, C. & S. F. RY. CO. v. MORRIS. (No. 6414.)

(Court of Civil Appeals of Texas. Austin. April 12, 1922. Rehearing Denied May 10, 1922.)

1. **Carriers ⬄219(7)—Stipulation in bill of lading limiting liability to damages sustained before delivery to connecting carriers void, though shipment interstate.**

Stipulation in bill of lading of initial carrier of live stock limiting its liability to damages sustained before delivery to connecting carriers *held* void, though shipment was interstate.

2. **Carriers ⬄230(12) — Instruction as to measure of damages held not to authorize consideration of negligence not alleged.**

In action for death of cattle from injuries received in transportation, an instruction as to measure of damages to be adopted "if you find that the defendant G. Railway Company or its connecting carriers were guilty of negligence, and that the plaintiff has been damaged as alleged," *held* not misleading as against contention that it did not confine jury to specific acts of negligence alleged; the words "as alleged" having reference "to the matter of negligence and damages."

3. **Trial ⬄352(4)—Special issue held not to authorize consideration of negligence not pleaded in view of instructions preliminary to submission of special issues.**

In action for death of cattle from injuries received in transportation, special issue as to whether the cattle were "injured in such way by such negligence, if any, as to cause their death" *held* not to authorize jury to consider acts of negligence not pleaded, in view of instructions preceding submission of special issues referring to the negligence as alleged in the petition.

4. **Evidence ⬄474(11)—Cattlemen who accompanied shipment qualified to express opinion as to whether cattle died from injuries received in transit.**

In action for death of cattle from injuries sustained during transportation, experienced cattlemen who accompanied the shipment *held* qualified to express an opinion as to whether the cattle were killed by injury received in transit or from other causes.

5. **Evidence ⬄498½—Evidence held to show witnesses qualified to testify as to market value of cattle.**

In action for death of cattle from injuries received in transportation, evidence *held* to show witnesses qualified to testify as to what the reasonable market price of the cattle at destination would have been.

---

**6. Evidence ⊜⇒498½, 568(4)—Qualifications of witnesses as to market value primarily for court and weight of testimony is for the jury.**

The question of the qualifications of a witness as to market value of the cattle is primarily for the trial court, and the weight of the testimony is for the jury.

**7. Appeal and error ⊜⇒1060(1) — Refusal to permit defendant's attorney to argue that amount specified in bill of lading was agreed valuation held not reversible error. ·**

Where bill of lading was not signed by shipper and stated that the valuation specified was to enable carrier to apply the lawful tariff rate, and that the valuation related only to the time and place of shipment, refusal to permit the railroad's attorney, in action for death of cattle from injuries sustained, to argue that the amount specified was the agreed valuation, *held* not reversible error.

Appeal from District Court, Coleman County; J. O. Woodward, Judge.

Suit by J. P. Morris against the Gulf, Colorado & Santa Fé Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Snodgrass & Dibrell, of Coleman, and Terry, Cavin & Mills and O. B. Wigley, all of Galveston, for appellant.

Critz & Woodward, of Coleman, for appellee.

BRADY, J. Appellee brought this suit against appellant to recover damages for the alleged negligent killing of 30 head of cattle shipped over the line of appellant and connecting carriers from Coleman, Tex., to Foraker, Okl. The grounds of negligence alleged in the petition were rough, reckless, and improper conduct on the part of the employés of defendant and its connecting carriers in handling the cattle in transit to destination.

The railway company defended upon the grounds that the shipment was interstate, and in the bill of lading issued to appellee the liability of appellant was limited to its own line, and that under the federal laws it was authorized to so limit its liability. It was also claimed that the cattle were very poor and weak, and that they were dipped in a strong solution of arsenic and other substances; such dipping, in view of the poor condition of the cattle, causing any damage suffered during the transportation. The other special pleas it is not necessary to state, since no question with relation thereto is presented on the appeal.

The case was submitted to the jury on special issues. The findings are to the effect that 29 head of cattle had been killed or injured by the negligence of appellant or its connecting carriers, of the reasonable market value of $1,600.80; that they were injured to the extent of $150.80 by being dipped; and also that the condition of the cattle as a result of their being dipped contributed to the injuries received by them in transportation, but that the cattle did not die from the dipping of the cows at Brownwood, Tex. Judgment was rendered for $1,600.80, less $150.80, found to be the amount of the damage from dipping. These findings are supported by evidence.

[1] In several forms the point is raised here that the stipulation in the bill of lading against liability for damages sustained after the shipment left appellant's line was valid, because the shipment was interstate, and not transported on through bill of lading. Both the verdict and judgment embrace damages occurring on the lines of connecting carriers. If the above proposition be correct, the judgment would have to be set aside, and the cause reversed. However, this very question has been recently considered and decided by this court in the case of Gulf, Colorado & Santa Fé Railway Company v. G. D. Hines, 239 S. W. 244, from Coleman county, upon substantially similar facts. The opinion was rendered February 8, 1922, but has not yet been [officially] reported. Our holding was contrary to the contention of appellant, for the reasons indicated in the opinion referred to. We see no reason to depart from our previous holding, and refer to the opinion in the Hines Case upon that question. All assignments in the brief raising this question are therefore overruled.

Appellant complains of the following charge:

"You are charged that, if you find that the defendant, Gulf, Colorado & Santa Fé Railway Company, or its connecting carriers were guilty of negligence, and that the plaintiff has been damaged as alleged, then you are further charged that the measure of damages, if any, would be the difference to Foraker, Okl., at the time of the arrival of the shipment of cattle in question between the reasonable market value of the cattle so killed or injured in the condition in which same were delivered and the condition in which same should have been delivered had they been delivered alive and without such injuries."

The particular objections are that the charge did not confine the jury to the specific acts of negligence alleged, and authorized, the jury to award damages, not only for injuries proximately caused by the negligence of appellant, but also injuries from other causes necessarily incident to a shipment for such distance.

[2] This portion of the charge was preliminary to the submission of the special issues and explanatory in its nature. We do not think it is fairly open to the criticism offered. While it might have been more definitely worded, it is our view that the charge, which really relates to the measure

---

⊜⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of damages, confines the question of negligence as well as damages to the grounds alleged in the petition. The qualifying words "as alleged" apply both to the matter of negligence and damages, and we do not think the jury could reasonably be said to have been misled. The assignment on this point is overruled.

There are similar objections to the submission of special issue No. 1, which was as follows:

"Were the 29 head of cows referred to in plaintiff's petition, or any of them, killed by the defendant or its connecting carriers, en route from Coleman, Tex., to Foraker, Okl., or injured in such way by such negligence, if any, as to cause their death?"

[3] This issue, too, is unhappily worded, and, considered alone, might be subject to the objections urged. However, we think the question should be taken in connection with the preceding charge of the court, which specially refers to the negligence as alleged in the petition, and that the phrase "such negligence, if any, as to cause their death," must fairly have been considered by the jury to relate to the negligence pleaded by the plaintiff. The jury must be credited with some common sense, and we do not think appellant was prejudiced by the form of the question, especially as the evidence does not raise any issue of other acts of negligence by the carriers, except the matter of rough and improper handling in transit. This assignment is overruled.

It is urged in some of the assignments that the verdict is contrary to the overwhelming weight of the evidence, which shows that the carriers were not guilty of any negligence, and also because the jury found that the plaintiffs were negligent in dipping the cattle at Brownwood, Tex. We think there is no question that there was ample evidence to support a finding of negligence by appellant and connecting carriers in the matter of rough handling of the cattle. While the jury found that the dipping of the cattle, in their condition, caused some damage, the amount thereof was ascertained by the jury, and was deducted by the trial court from the total damage; therefore we think the judgment is not assailable on this ground.

[4] There are objections to the action of the trial court in permitting certain witnesses to testify as to their opinion of the cause of the death of the cattle, which was stated to be due to the injuries sustained during transportation. It is argued that these witnesses were not shown to be qualified to express an opinion. The evidence shows that these witnesses were familiar with the cattle and accompanied the shipment, and testified in detail with reference to the injuries they received, and as to the dipping of the cattle and its effect. They were experienced cattlemen and, we think, were qualified to express an opinion as to whether the cattle were killed by injuries in transit, or from dipping or other causes.

[5, 6] It is also claimed that the court erred in admitting the testimony of the witness Morris upon the question of reasonable market value of the cattle at destination. It developed upon the examination of this witness as to his qualification that he stated that Foraker, Okl., is a town of about 250 or 300 people, engaged mostly in raising cattle and holding grazing lands; that the business conducted there is mostly general merchandise, and that there was no regular market there, such as in the cities of Fort Worth and Kansas City; that the witness had never been at Foraker before. However, it was further shown that he qualified by stating that he knew the reasonable market value there of the cattle that were killed, at the time and place of delivery; that he had been there about three days; and that he could have sold the cattle there during the time that he was in Foraker. He further testified that he had an offer on the cattle. We regard this as a very close question, and that the testimony is on the border line of admissibility and nonadmissibility. However, in view of the statement of the witness that he knew the reasonable market value and could have sold the cattle while there, in connection with his other testimony, we are not prepared to hold the testimony inadmissible. The question of the qualifications of a witness on such a point is primarily for the trial court, and the weight of his testimony for the jury. We think only in a clear case of abuse of discretion should a case be reversed in such circumstances. While there is some doubt on the question, we think it should be resolved in favor of the holding below.

[7] During the course of the argument counsel for appellant, on the point of market value, undertook but was not permitted to argue to the jury the fact that in the bill of lading there was an agreed valuation of $55. The testimony for appellee upon the question of value was to the effect that the reasonable market value at Foraker was $75 per head. The valuation placed in the bill of lading was $55, but it is expressly stated therein that it was for the purposes of enabling the carrier to apply the lawful rate provided in its tariffs and that the valuation is at time and place of shipment. The bill of lading was not signed by the plaintiff nor by the shipper, in person or by agent. We do not think the action of the trial court in this regard constitutes reversible error, especially because the valuation related only to the value at the time and place of shipment, and also was for the purpose of applying a rate. Furthermore, an analysis of the verdict shows that the jury only allowed damages on the basis of $55.20 per head. This was but 20 cents per head in excess of

the agreed valuation, and it is to be remembered that the shippers were required to pay the freight to destination.

All assignments have been given due consideration and are overruled. The judgment will be affirmed.